UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOLANDA SAAVEDRA DE BARRETO,<br>A 37 471 341,<br>    Petitioner, | :<br>:<br>:<br>: |
| vs. | :   Civil No: 3:02cv283 (PCD) |
| IMMIGRATION and NATURALIZATION<br>SERVICE,<br>    Respondent. | :<br>:<br>:<br>: |

**RULING ON RESPONDENT'S MOTION TO TRANSFER**

Petitioner, Yolanda Saavedra De Barreto, has filed with this Court a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. She seeks an injunction enjoining Respondent from deporting her to her native Columbia, pursuant to her deportation order. Respondent has filed a Motion to Transfer the petition to the Second Circuit Court of Appeals pursuant to § 106(c) of the REAL ID Act of 2005 [Doc. No. 48].

**I.  BACKGROUND**[1]

Petitioner a native and citizen of Columbia, was admitted to the United States as a permanent resident on November 4, 1982 based upon a petition filed by her ex-husband, a United States citizen. Pet'r Mem. Supp. Mot. Summ. Judg. at 2.. On August 27, 1993, Petitioner pled guilty to conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846. Id. at 3. For the next five years, Petitioner served as an informant in Justice Department prosecutions of South American drug dealers, repeatedly testifying in open court against members of the Cali,

---

[1] The facts described herein are based upon the undisputed facts presented in Petitioner's Second Amended Petition for Writ of Habeas Corpus and her Opposition to Respondent's Motion to Transfer.

Columbia drug cartel. Id. Based on the "substantial assistance" she provided, Petitioner was sentenced to no jail time and five years probation, a significant departure from the sentencing guideline range of fifty-seven to seventy-one months imprisonment for her offense. Id.

Based on her alleged fear of being killed if she were removed to Columbia, Petitioner applied for relief from removal to Columbia pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), see 64 Fed. Reg. 8477 (Feb. 19, 1999), amending, *inter alia*, 8 C.F.R. § 208, which bars signatory states from removing anyone to a country where there are substantial grounds to believe that he or she would be in danger of being subjected to torture in that country.

On December 19, 2001, Immigration Judge ("IJ") Michael W. Straus denied Petitioner's application for withholding removal pursuant to the CAT, holding that because her putative persecutors were criminals rather than government officials or persons acting with the consent or acquiescence of government officials, she did not qualify for relief under the CAT. Petitioner did not appeal this order.

Petitioner filed a Motion to Reopen her case with the Immigration Court, seeking to reopen her removal case in order to apply for relief from removal pursuant to former INA § 212(c), codified at 8 U.S.C. § 1182.[2] Petitioner asserts that she was "facially eligible" for INA § 212(c) relief, having been a permanent resident for more than seven years and incarcerated for less than five years for her criminal convictions. When she was admitted to permanent residence

---

[2] Former INA § 212(c) grants the Attorney General discretion to permit long-term permanent residents with criminal convictions to retain their permanent residence. Applications for relief pursuant to this provision are decided by IJs, who evaluate positive factors—such as the noncitizen's family ties, length of residence and employment in the United States—and negative factors—such as the noncitizen's criminal record and other evidence of bad character or immigration violations—to determine whether to grant relief.

in 1982, however, Petitioner failed to declare a prior deportation on her immigration visa application, a misrepresentation she blames on the attorney who prepared her application and allegedly told her that the deportation order would not affect her ability to become a permanent resident.

The IJ denied Petitioner's Motion to Reopen her case on November 14, 2002 on the grounds that the motion was untimely, that the proposed rule "in fact, may never be implemented" and that Petitioner "was inadmissible at the time her visa was granted." Petition appealed to the Board of Immigration Appeals ("BIA"), which dismissed the appeal in a brief decision, upholding the IJ's decision not to reopen the case due to the fact that Petitioner's Motion to Reopen was not timely filed. See 8 C.F.R. §§ 3.23(c)(2); 3.23(b)(1) (stating that a motion to reopen must be filed within 90 days of a final administrative decision).

Petitioner filed a Petition for Writ of Habeas Corpus [Doc. No. 1] with this Court on February 15, 2002, arguing that if she is removed to Columbia she will be tortured or killed for her cooperation with the Department of Justice. Pet. at 1. Petitioner claims that because the danger she faces is a result of her cooperation with the government, it has an obligation under the Fifth Amendment of the Constitution to protect her. Id. (citing, among others, Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993) (state-created danger theory)). Accordingly, she seeks to enjoin Respondent from removing her to her native Columbia.

On August 26, 2005, Respondent filed a Notice of Applicability of Public Law 109-13 ("The REAL ID Act of 2005") and Motion to Transfer, seeking to transfer Petitioner's habeas petition to the Court of Appeals for the Second Circuit. Respondent claims, pursuant to § 106(c) of the REAL ID Act of 2005, that this Court must transfer Petitioner's habeas petition to the

Court of Appeals as it is a challenge to a final administrative order of removal. See Resp't Mot. Transfer at 2.

## II. DISCUSSION

### A. Jurisdiction and Transfer under the REAL ID Act of 2005

The REAL ID Act was enacted on May 11, 2005 as part of the "Emergency Supplemental Appropriation Act for Defense, the Global War on Terror, and Tsunami Relief, 2005." Pub. L. No. 109-13, 119 Stat. 231 (2005). Section 106 of the Act amends § 242 of the Immigration and Nationality Act ("INA") of 1952, 8 U.S.C. § 1252, by changing the procedures for judicial review of administrative final orders of removal. The Act specifically strips the district courts of their habeas corpus jurisdiction over orders of removal. Section 106(a)(1) of the Act mandates that the courts of appeals shall be the sole and exclusive means for judicial review of an order of removal.[3] Section 106 took effect on May 11, 2005, the date of the enactment of the REAL ID Act, and applies to all cases in which a final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment. Id. at § 106(b). In addition to requiring petitions filed after May 11, 2005 to be filed in the courts of appeals, the Act also requires district courts to transfer any case or part of any case challenging an order of removal, deportation or exclusion pending on the date of the Act's enactment to the Court of Appeals for the Circuit in which a petition for review could have been filed.[4]

---

[3] Section 106(a)(1) reads in relevant part: "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1), 119 Stat. 231 (2005).

[4] Section 106(c) provides that "the district court shall transfer" any case "challenging a final administrative order of removal, deportation or exclusion" that is "pending in a district court on the date of enactment of this division." REAL ID Act of 2005, Pub. L. No. 109-13, § 106(c), 119 Stat. 231 (2005).

While Congress specifically eliminated the district courts' habeas corpus jurisdiction over review of removal orders, the REAL ID Act does not affect the district courts' jurisdiction over review of other habeas corpus claims. Section 106(a)(1) only eliminates district courts' habeas jurisdiction over review of orders of removal. See id. at § 106(a)(1) (a petition for review shall be the "sole and exclusive means for judicial review of an order of removal"). Moreover, the REAL ID Act requires the district courts to transfer only those parts of the case that challenge an order of removal, deportation or exclusion. Id. at § 106(c) ("[T]he district court shall transfer the case (or part of the case that challenges the order of removal, deportation or exclusion) to the court of appeals . . . "). The legislative history specifically states that § 106 does not divest district courts of habeas review over other claims: "[S]ection 106 will not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders." H.R. Rep. No. 109-72, 175, 2005 U.S.C.C.A.N. 140 (May 3, 2005).

Thus, district courts retain jurisdiction over matters independent of challenges to removal orders. See, e.g., Channer v. Dep't of Homeland Sec., 406 F. Supp. 2d 204 (D. Conn 2005) (holding that the petitioner's challenge was independent of a challenge to her removal order because he was challenging her detention in state custody, thereby rendering § 106(c) inapplicable); Zhicay v. Sec'y of the Dep't of Homeland Sec., 2005 WL 3180188, 2005 U.S. Dist. LEXIS 29699 (D. Conn. Nov. 23, 2005) (transferring the portion of the petitioner's writ of habeas corpus seeking judicial review of her removal order, but retaining the portion of petitioner's claim requesting adjudication of her pending applications for permission to reapply for admission and for adjustment of her status). The district courts do not, however, have

jurisdiction to review claims that are not found to be independent of removal challenges. See, e.g., Munoz v. Gonzalez, 2005 WL 1644165, 2005 U.S. Dist. LEXIS 14014 (S.D.N.Y. July 11, 2005) (holding that the district court lacked jurisdiction to review the merits of a petition challenging a removal order or to stay a removal order where the petitioner was not specifically challenging his physical detention); Blake v.Gonzalez, 2005 WL 2850079, 2005 U.S. Dist. LEXIS 25753 (D. Conn. Oct. 24, 2005) (holding that a challenge to the IJ's procedures and decision to deport the petitioner constituted a challenge to a final order of deportation, stripping the district court of jurisdiction to review the habeas petition).

Because Petitioner's habeas claim was pending on May 11, 2005, the REAL ID Act applies. Petitioner contends, however, that § 106(c) does not apply to her petition because she is not challenging her order of removal. See Pet'r's Opp. Mot. Transfer at 4-5. According to Petitioner, because she solely seeking an injunction to prevent her removal to Columbia she is not challenging the validity of the removal order, but only the manner in which Respondent can execute the order. See id. (arguing that she "does not challenge the ability of the government to remove her to *any* country, she solely challenges their ability to remove her to *one* country") (emphasis in original). Indeed, Petitioner concedes the legality of her order of removal, saying that "[t]he government clearly has a legal right to remove her from the United States." Id. at 4.

In support of her argument, Petitioner likens her petition for an injunction to a claim for protection under the Convention Against Torture ("CAT"), which bars the government from removing aliens to a country where it is more likely than not that the alien will be tortured upon return to that country. See id. at 5; see also 8 C.F.R. § 208.16. When an alien is granted protection under the CAT he or she can still be removed from the United States, but not to the

country where it has been determined that there is a strong possibility of the alien being tortured. See 8 C.F.R. § 208.16(f) (permitting the INS to "remov[e] an alien to a third country other than the country to which removal has been withheld or deferred"). Petitioner maintains that a claim for protection under the CAT is not a challenge to a removal order and § 106(c) should not apply because a person seeking protection under the CAT is merely requesting a limitation on how the removal order should be executed. Id. at 5. Petitioner maintains that as long as she only challenges her removal to one specific country rather than to any country, the transfer provisions of § 106(c) do not apply. Id.

Contrary to what Petitioner argues, however, the REAL ID Act can appropriately apply to claims for protection similar to those under the CAT. Section 106(a)(1)(B) added the following provision to § 242(a) of the INA:

> (4) CLAIMS UNDER THE UNITED NATIONS CONVENTION – Notwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(B), 119 Stat. 231 (2005). Prior to the enactment of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(C) barred aliens convicted of an aggravated felony from petitioning the court of appeals for direct review of the BIA's denial of CAT relief. See Enwonwu v. Gonzales, ___ F.3d ___, 2006 WL 321186, *10, 2006 U.S. App. LEXIS 3375 (1st Cir. Feb. 13, 2006). Section 106(a)(1)(B) and section 106(a)(1)(D) of the REAL ID Act have, however, removed the barrier to petition the courts of appeals to review CAT claims at least in regard to questions of law and constitutional claims. See REAL ID Act, § 106(a)(1)(B) ("a petition for review filed with an appropriate court of appeals . . . shall be the

sole and exclusive means for judicial review of any cause or claim under the [CAT]"); § 106(a)(1)(D) (nothing in . . . this Act . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law"); see also Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005) (noting that the REAL ID Act granted jurisdiction to courts of appeals to review CAT claims by aggravated felons, which extended to legal determinations and application of law to the facts); Hamid v. Gonzales, 417 F.3d 642, 647 (3d Cir. 2005) (noting that, under the REAL ID Act, courts of appeals may review constitutional and legal questions relevant to an aggravated felon's claim for CAT relief).

Thus, even if, as Petitioner argues, a claim for protection from removal to one specific country could be regarded as merely a challenge to the manner in which a removal order can be executed and not as a challenge to a final order of removal, that claim would still be subject to the provisions of the REAL ID Act and the court of appeals would be the only available forum for judicial review.  It appears then that Congress, in enacting § 106, did not intend to distinguish between a challenge to a final order of removal and a challenge to the manner in which a final order may be executed.  Both challenges are subject to the provisions of the REAL ID Act and both can only be reviewed in the courts of appeals.  Thus, even if we were to equate Petitioner's habeas claim to a claim for protection under the CAT, we could not escape the jurisdictional bars and transfer provisions of the REAL ID Act.

A review of the legislative history of the REAL ID Act confirms that Congress intended § 106 to apply to habeas claims like Petitioner's.  Congress enacted § 106 in an effort to address and ameliorate the effect of a number of court decisions interpreting changes made to the INA in 1996 that favored criminal aliens.  H.R. Rep. 109-72, 172, 2005 U.S.C.C.A.N. 140 (May 3,

2005). In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3546, both of which contained provisions eliminating habeas review of deportation and removal orders issued against criminal aliens. Id. at 172-73. In 2001, however, the Supreme Court held that criminal aliens could seek habeas review of their removal orders under 28 U.S.C. § 2241 in district courts and could appeal an adverse decision to the appropriate court of appeal. I.N.S. v. St. Cyr, 533 U.S. 289 (2001). The Supreme Court relied in part on the fact that Congress did not specifically mention § 2241 or habeas petitions when it eliminated all judicial review over criminal aliens' removal orders. Id. at 312-13. The Court required an explicit reference to § 2241 or habeas petitions because Congress had not provided a separate judicial forum for criminal aliens to raise pure questions of law under AEDPA and the IIRIRA at the time St. Cyr was decided. Id. at 298-300, 312-14. The Court also recognized that as a result of its holding, criminal aliens could receive judicial review in both the district courts and the courts of appeals, whereas non-criminal aliens could only petition the courts of appeals. This anomaly, the Court said, could be fixed by Congress "provid[ing] an adequate substitute [to section 2241] through the courts of appeals." Id. at 314. n.38.

The St. Cyr holding had several problematic effects: (1) criminal aliens could delay their expulsion from the United States; (2) criminal aliens who had committed serious crimes in the United States were able to obtain more judicial review than non-criminal aliens; and (3) federal courts were confused about what immigration issues could be reviewed and which courts could review them. See H.R. Rep. 109-72, 173-74. Noting that this resulted in "piecemeal review,

uncertainty, lack of uniformity, and a waste of resources both for the judicial branch and Government lawyers—the very opposite of what Congress tried to accomplish in 1996," id. at 174, Congress enacted § 106 in an effort to solve these anomalies and restore uniformity and order to the law.  Id.  ("By channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation.").  Under § 106, criminal aliens are less able to delay their removal and will not receive more judicial review than non-criminal aliens.  Id.  Congress emphasized that, in enacting § 106, it was not completely stripping the district courts of habeas jurisdiction, but intended the amendment to eliminate habeas review only over challenges to removal orders, not "habeas review over challenges to detention that are independent of challenges to removal orders."  Id. at 175.

In light of Congress' expressed intent in enacting § 106, this Court concludes that Petitioner's habeas petition falls within the ambit of that section and should be transferred to the Second Circuit as a Petition for Review.  First, Petitioner's challenge to the manner in which the removal order is executed is not an independent challenge to her detention.  The removal order is the basis for her being detained.  The ordinary meaning of the word "independent" is "not relying on something else: not contingent; not dependent."  Webster's New Collegiate Dictionary 612 (9th ed. 1985).  Any challenge to Petitioner's detention would have to depend on the removal order because, again, that is the basis of her being in custody.  Additionally, the issues that will be raised in Petitioner's claim for an injunction would have to include review of the IJ's and BIA's procedures and decisions in choosing to remove her to Columbia.  A petition for an injunction preventing Petitioner's removal to Columbia is not an independent challenge of her detention, but rather is just another way to challenge her order of removal.  She seeks its

restriction.

Retaining jurisdiction over Petitioner's claim for an injunction would ignore Congress' intentions in enacting § 106 of the REAL ID Act. Petitioner, a criminal alien, would be able to obtain more judicial review than a non-criminal alien by petitioning this court and then potentially appealing the decision to the court of appeals. In addition, allowing Petitioner's claim to be heard in this court would cause confusion among other federal courts as to what issues could be judicially reviewed by the district courts and what issues must be judicially reviewed by the courts of appeals. Furthermore, Petitioner would be able to delay her removal from this country were she to have her claim judicially reviewed in this court as well as the court of appeal.

Other district court decisions in this circuit lend support to our conclusion. Unlike in <u>Channer</u>, 2005 WL 3542900, and <u>Zhicay</u>, 2005 WL 3180188, Petitioner does not challenge her state conviction, physical detention or ability to adjudicate an application for readmission or adjustment of status. Petitioner has already served her sixty-day sentence for her breach of peace and failure to appear charges and does not question the validity of her drug conviction or classification of it as an aggravated offense so as to warrant her deportation. Her sole contention is that the United States government has a duty to protect her because it created the risk of torture when it enlisted her in the prosecution of the major Ghanian drug ring. Any judicial review would be more like that in <u>Blake</u>, 2005 WL 2850079, because such review would necessarily require examination of the IJ's and BIA's procedures and decisions in choosing Columbia as the country to which Petitioner would be removed and any consideration by the IJ and/or BIA of Petitioner's cooperation with the Department of Justice in bringing down her former drug ring. Thus, just like <u>Blake</u>, any judicial review of Petitioner's claim would include and likely involve

nothing more than a review of the arguments and proceedings before the IJ and BIA regarding Petitioner's deportation to Columbia. Petitioner's claim is, therefore, not an independent challenge to her detention and is subject to transfer under § 106(c).

### B. Suspension Clause

The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, s. 9, cl. 2. However, "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Swain v. Pressley, 430 U.S. 372, 381 (1977); accord United States v. Hayman, 342 U.S. 205, 233 (1952). The Supreme Court has suggested that an adequate substitution for the district courts' habeas corpus jurisdiction could be judicial review in the courts of appeals. See I.N.S. v. St. Cyr, 533 U.S. 289, 314 n.38, 121 S.Ct. 2271, 150 L. Ed. 347 (2001).

The Supreme Court requires that Congress specifically articulate its intent to repeal habeas corpus jurisdiction by "specific and unambiguous statutory directives." Id. at 299. A statute that does repeal habeas corpus jurisdiction would raise Suspension Clause issues if it entirely precludes review of a pure question of law by any court, as the Suspension Clause requires "some judicial intervention in deportation cases." Id. at 300 (quoting Heikkila v. Barber, 345 U.S. 229, 235, 73 S.Ct. 603, 97 L. Ed. 972 (1953) (internal quotations omitted)). The Second Circuit Court of Appeals has also stated that even a partial repeal of habeas jurisdiction may violate the Suspension Clause, if the statute allows for review of constitutional claims and jurisdictional facts, but not of statutory challenges. See Calcano-Martinez v. I.N.S.,

232 F.3d 328, 341 (2d Cir. 2000). The Calcano-Martinez Court reasoned that the language of 28 U.S.C. § 2241 extends to persons who claim to be detained in violation of not only the Constitution, but also of the laws and treaties of the United States, and therefore review of statutory challenges is also deemed essential to ensure that a detained alien receives due process of law. Id. at 342.

However, courts will generally avoid finding Suspension Clause violations if petitioners have an opportunity to be heard on the merits in a substitute judicial forum. The Supreme Court, in Swain, held that a state court's testing of the legality of a person's detention was not an inadequate substitution for federal habeas review merely because state judges do not have Article III life tenure. 430 U.S. at 381-83. Additionally, the Second Circuit has held that the one-year limitation period for filing habeas petitions under the AEDPA does not violate the Suspension Clause because petitioners still have an opportunity to be heard on the merits. Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 113 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). The Second Circuit has also held that treating a petitioner's habeas petition as "second or successive" under the AEDPA because her first petition was denied as time-barred does not violate the Suspension Clause because the petitioner had an opportunity to be heard on the merits. Villanueva v. United States, 346 F.3d 55, 62 (2d Cir. 2003), cert. denied, 124 S.Ct. 2895 (2004); see also Warren v. Garvin, 219 F.3d 111, 113 n.2 (2d Cir. 2000) cert. denied, 531 U.S. 968 (2000) (holding that dismissing a habeas petition as time-barred under the AEDPA does not violate the Suspension Clause because petitioner had "years" to file the petition and gave no explanation why he failed to file on time).

In contrast, however, the Second Circuit has held that a petition should not be classified

as "second or successive" under the AEDPA where the dismissal of the first petition as time-barred was erroneous. Muniz v. United States, 236 F.3d 122, 128-29 (2d Cir. 2001). Similarly, the Second Circuit has also held that a petition should not be classified as "second or successive" under the AEDPA where the petition seeks to raise a claim that matured after the first petition had been filed. James v. Walsh, 308 F.3d 162, 168 (2d Cir. 2002). The Court held that to hold otherwise would completely deny petitioner any collateral review, potentially raising a Suspension Clause issue. Id. Thus, a Suspension Clause violation does not arise unless a statutory provision effectively prevents a petitioner from being heard on the merits of her or her claim. As long as habeas petitioners have an opportunity to be heard on the merits in some judicial forum, a statutory provision repealing another court's habeas jurisdiction will not implicate the Suspension Clause.

Petitioner contends that because the Immigration Court and the BIA cannot adjudicate constitutional claims, see Arango-Araono v. INS, 13 F.3d 610, 614 (2d Cir. 1994), the administrative record will lack the factual development necessary for judicial review of constitutional issues like the ones raised here. Pet'r's Opp. at 9-10. According to Petitioner, since 8 U.S.C. § 1252(b)(4)(A) directs a court adjudicating a petition for review which challenges a removal order to limit its review to the facts in the administrative record, the court of appeals will not be in a proper position to rule on a "constitutionally based injunction on the execution of a removal order." Id. In the absence of habeas jurisdiction in the district courts, Petitioner fears that she will be deprived of an adequate and effective forum for judicial review. In such a situation, Petitioner argues, § 106 of the REAL ID Act constitutes an unlawful suspension of the writ of habeas corpus. Id. In order to avoid a Suspension Clause violation,

Petitioner argues that this court should interpret § 106 so that her case is not transferred to the Second Circuit Court of Appeals. See St. Cyr., 533 U.S. at 299-300 (holding that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems") (internal quotations and citations omitted).

Section 106 of the REAL ID Act contains clear and unambiguous statutory directives divesting the district courts of their habeas corpus jurisdiction to review final orders of removal. See REAL ID Act of 2005, § 106(a)(1)(B) ("Notwithstanding . . . section 2241 of title 28 . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal"). At first glance, the repeal of district courts' habeas jurisdiction appears lawful, but this Court must consider whether Petitioner still has an opportunity to be heard on the merits in another judicial forum in order to avoid a Suspension Clause issue. Section 106 provides for judicial review of final orders of removal in the courts of appeals, but Petitioner contends that in the absence of the district courts' habeas jurisdiction, the inability to create a factual record in regard to a constitutional claim at the administrative hearings effectively prevents petitioners from being heard on the merits of such constitutional claims in the courts of appeals. Pet'r's Opp. at 9-10. Petitioner argues that the courts of appeals are an inadequate or ineffective substitute forum and § 106 is, therefore, an unlawful suspension of the writ of habeas corpus. Id. This court disagrees.

First, Petitioner's argument that the administrative record will be insufficiently developed for the court of appeals to make a proper and valid decision on a constitutionally-based injunction is unavailing. Petitioner already had the opportunity to and did bring a claim for

protection under the CAT and that claim would raise many of the same issues involved in Petitioner's habeas petition. The claims do not challenge the fact that Petitioner should be removed from the country, but simply seek protection from removal to a country where there is a strong possibility of torture or physical harm. Thus, both would include a review of the evidence pertinent to determining the possibility of torture in the country at issue and even without the ability to petition this court, the administrative record should be developed on the issues raised in Petitioner's habeas petition.

Second, § 106 does not effectively preclude a petitioner from being heard on the merits of a claim similar to the one Petitioner presents. While § 106 prevents this court from hearing Petitioner's claim, it does not affect her ability to raise a claim for protection under the CAT before the Immigration Court or the BIA. Again, as Petitioner has admitted, the relief she is seeking—i.e., an injunction preventing her removal to Ghana—is exactly the same relief that she would have received had she been granted protection under the CAT. When an alien is granted protection under the CAT, the government is prohibited from removing the alien to the country where it has been determined that there is a strong possibility of the alien being tortured. 8 C.F.R. § 208.16(f). In other words, when protection under the CAT is granted, the government is effectively enjoined from removing the alien to the country wherein torture is possible. Thus, petitioners raising claims similar to the one raised here have the opportunity to be heard on the merits of their claims during a CAT hearing.

Furthermore, § 106 specifically provides Petitioner with a means for judicial review of her claims under the CAT, namely, the courts of appeals. See REAL ID Act, § 106(a)(1)(B)(4). Section 106 also provides that limitation on judicial review does not preclude review of

constitutional claims or questions of law raised upon a petition for review filed with the court of appeals. Id. at § 106(a)(1). Even though the Immigration Court and BIA are without authority to hear constitutional claims like Petitioner's during a CAT hearing, § 106 does not preclude her from raising such constitutional claims before the court of appeals upon review.

Finally, even if the record is not sufficiently developed,, it is at least plausible that the courts of appeals could conduct their own fact-finding or at least remand to the Immigration Court or the BIA for a fact-finding hearing if one is necessary. 28 U.S.C. § 2347(b)(1) provides a mechanism by which the courts of appeals could remand the case to the administrative agency where a hearing is required by law and no such hearing was conducted by the agency. Similarly, § 2347(b)(3) also provides that where a hearing is not required by law but a genuine issue of material fact is presented, the courts of appeals can transfer the case to a district court for a hearing and determination as if the proceedings were originally initiated in the district court. In Reno v. American-Arab Anti-Discrimination Committee, the Attorney General argued that because the INS was not required to hold a hearing before filing a deportation order, a § 2347(b)(3) transfer to the district court would be an appropriate mechanism for the resolution of material facts in some cases. See 525 U.S. 471, 496 n.2 (1999) (Ginsburg, J., concurring). Justice Ginsburg, recognizing the validity of this argument, stated that "[w]hile it is best left to the courts of appeals in the first instance to determine the appropriate mechanism for factfinding necessary to the resolution of a constitutional claim, I am confident that provision for such factfinding is not beyond the courts of appeals' authority." Id. (Ginsburg, J., concurring). While Justice Scalia questions the validity of this procedure in his majority opinion, see id. at 488 n.10, factfinding or remand for factfinding by the courts of appeals in the immigration context has yet

to be foreclosed. Therefore, the lack of a developed factual record is not a sufficient basis for the argument that the courts of appeals are an inadequate and ineffective substitute forum for habeas jurisdiction.

The facts that § 106 does not preclude Petitioner from raising a claim under the CAT to the Immigration Court and the BIA, that, according to Petitioner, the claim is essentially equivalent to the one presently raised and that § 106 provides a judicial means of review of both constitutional claims and questions of law lead this court to conclude that § 106 does not effectively preclude Petitioner from being heard on the merits of her claim and is not, therefore, an unlawful suspension of the writ of habeas corpus.[5] Accordingly, this court must transfer this case to the Second Circuit Court of Appeals in accordance with the clear Congressional mandates. Petitioner's constitutional arguments can be addressed by the court of appeals.

**III. CONCLUSION**

Respondent's Motion to Transfer [Doc. No. 48] is **granted** and the petition for writ of habeas corpus is hereby **transferred** to the Second Circuit Court of Appeals. Any removal of Petitioner is hereby **stayed** pending the resolution of the matter before the Second Circuit. The clerk shall close the case.

---

[5] This Court has come across one case which suggested that Section 106(a)(1)(B)(5) may provide an inadequate substitute forum because it bars aliens fighting removal from receiving an evidentiary hearing. In Wahab v. U.S. Attorney Gen., 373 F.Supp.2d 524, 525 (E.D.Pa. 2005), the court indicated that because § 106(a)(1)(B)(5) requires aliens to file a petition for review, which restricts a reviewing court to decide the petition only on the administrative record, aliens are deprived of the ability to present evidence at a hearing. The court also intimated that § 106(a)(1)(B)(5) may be even more inadequate because, read together with 8 U.S.C. § 1252(a)(2)(C), which bars courts from entertaining an alien's petition for review if that alien committed any enumerated crime, section 106 appears to foreclose certain alien criminals from receiving any judicial review. Id. Nevertheless, the court honored Congress' mandates and transferred the case to the Court of Appeals.

SO ORDERED.

Dated at New Haven, Connecticut, March  10 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut